UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DAVID PURPIGLIO, Individually and For Others Similarly Situated | **Case No. 1:23-cv-00924** |
| v. | Jury Trial Demanded |
| DROPOFF, INC. | FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.    David Purpiglio (Purpiglio) brings this class and collective action lawsuit to recover unpaid wages and other damages from DropOff, Inc. (DropOff).

2.    DropOff employed Purpiglio as one of its Straight Time Employees (defined below) in Maryland, Pennsylvania, and West Virginia.

3.    DropOff paid Purpiglio and the other Straight Time Employees by the hour.

4.    The Straight Time Employees regularly worked more than 40 hours a week.

5.    But DropOff did not pay its Straight Time Employees overtime.

6.    Instead, DropOff paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek (or "straight time for overtime").

7.    DropOff's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA), the Maryland Wage and Hour Law, MD. CODE (MWHL), and the Pennsylvania Minimum Wage Act (PMWA) by depriving the Straight Time Employees of the "time and a half" overtime pay they are owed for all hours worked after 40 in a workweek.

8.    Likewise, DropOff's uniform straight time for overtime pay scheme violates the Maryland Wage Payment and Collection Law (MWPCL) and the Pennsylvania Wage Payment and Collection Law (PWPCL) by depriving Straight Time Employees of all wages (including overtime

1

wages) due, earned, and owed to them.

## JURISDICTION & VENUE

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.     This Court has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11.     This Court has general personal jurisdiction over DropOff because DropOff maintains its principal place of business and headquarters in Austin, Texas.

12.     Venue is proper because DropOff maintains its headquarters in Austin, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13.     Purpiglio worked for DropOff as a Medical Courier from approximately January 2021 until September 2021.

14.     Throughout his employment, DropOff assigned Purpiglio to work on various projects for the Red Cross in Maryland, Pennsylvania, and West Virginia

15.     Throughout his employment, DropOff paid Purpiglio straight time for overtime.

16.     Purpiglio's written consent is attached as **Exhibit 1**.

17.     Purpiglio brings this action on behalf of himself and all other similarly situated Medical Courier who DropOff paid under its straight time for overtime pay scheme.

18.     DropOff paid each of these employees the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

19.     The FLSA Collective of similarly situated employees is defined as:

> **All DropOff Medical Couriers who were paid straight time for overtime at any time during the past 3 years ("FLSA Collective Members").**

20. Purpiglio also seeks to represent such a class under the MWHL and MWPCL pursuant to Fed. R. Civ. P. 23.

21. The Marland Class of similarly situated employees is denied as:

**All DropOff Medical Couriers who were paid straight time for overtime while working in Maryland at any time during the past 3 years ("Maryland Class Members").**

22. Purpiglio also seeks to represent such a class under the PMWA and PWPCL pursuant to Fed. R. Civ. P. 23.

23. The Pennsylvania Class of similarly situated employees is denied as:

**All DropOff Medical Couriers who were paid straight time for overtime while working in Pennsylvania at any time during the past 3 years ("Pennsylvania Class Members").**

24. The FLSA Collective Members, Maryland Class Members, and Pennsylvania Class Members are collectively referred to as the "Straight Time Employees."

25. DropOff is a Delaware limited liability company that maintains its headquarters in Austin, Texas.

26. DropOff can be served with process by serving its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

COVERAGE UNDER THE FLSA

27. At all relevant times, DropOff was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. At all relevant times, DropOff was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. At all relevant times, DropOff was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for

commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, vehicles, and medical materials—that have been moved in or produced for commerce.

30.     At all relevant times, DropOff has had an annual gross volume of sales made or business done of not less than $500,000 each year.

31.     At all relevant times, the Straight Time Employees were DropOff's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

32.     At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

33.     DropOff uniformly paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek.

34.     As a result of DropOff's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Purpiglio) did not receive overtime at the premium rates required by the FLSA.

35.     DropOff applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

36.     By paying the Straight Time Employees straight time for overtime, DropOff did not pay the Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

37.     DropOff's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

38.     DropOff is a national courier service that provides medical courier services to the healthcare industry.

4

39.     To meet its business objectives, DropOff hires Medical Couriers, like the Straight Time Employees, to transport donated blood and Red Cross supplies to its healthcare industry clients.

40.     DropOff pays its Straight Time Employees on an hourly basis.

41.     DropOff routinely schedules its Straight Time Employees to work more than 40 hours a week.

42.     Instead of paying its Straight Time Employees at 1.5 times their regular rates of pay for hours worked after 40 in a workweek, DropOff pays them same hourly rate for all hours worked.

43.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice for similar work.

44.     For example, Purpiglio worked for DropOff as a Medical Courier in Maryland, Pennsylvania, and West Virginia from approximately January 2021 until September 2021.

45.     As a Medical Courier, Purpiglio's primary responsibilities included transporting donated blood and Red Cross supplies to DropOff's healthcare industry clients.

46.     As a DropOff Medical Courier, Purpiglio drove a Ford E-350 van, which weighs less than 10,000 pounds.

47.     DropOff paid him under its illegal straight time for overtime pay scheme.

48.     Specifically, DropOff required Purpiglio to record his hours worked and paid him the same hourly rate (approximately $13/hour) for all hours worked, including those worked after 40 in a workweek.

49.     DropOff requires all its Straight Time Employees to record the number of hours they work.

50.     DropOff never paid the Straight Time Employees on a "salary basis."

51.     DropOff did not pay its Straight Time Employees a guaranteed salary that was not subject to deductions.

52.    If the Straight Time Employees work fewer than 40 hours, DropOff only pays them for the hours they actually work.

53.    But Purpiglio and the other Straight Time Employees regularly work more than 40 hours in a workweek.

54.    Purpiglio worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

55.    Likewise, each Straight Time Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

56.    Indeed, Purpiglio and the Straight Time Employees typically work 10+ hours a day, for at least 5 days a week.

57.    Purpiglio and the other Straight Time Employees work in accordance with the schedule set by DropOff (and/or its clients).

58.    When Purpiglio and the Straight Time Employees work more than 40 hours in a workweek, DropOff does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

59.    DropOff only pays Purpiglio and the Straight Time Employees straight time for overtime.

60.    Despite misclassifying Purpiglio and the Straight Time Employees as exempt, Purpiglio and the other Straight Time Employees primarily perform non-exempt job duties.

61.    The Straight Time Employees' primary duties do not include supervising other DropOff employees.

62.    The Straight Time Employees' primary duties are not management.

63.    The Straight Time Employees' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

64. Rather, the Straight Time Employees' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by DropOff.

65. Virtually every job function is predetermined by DropOff, including the tools and equipment used at the delivery site, the medical materials to delivery, the schedule of work, and related work duties.

66. As DropOff Medical Couriers, the Straight Time Employees' primary duties include transporting donated blood and Red Cross supplies to DropOff's healthcare industry clients.

67. As DropOff Medical Couriers, the Straight Time Employees' drive Ford E-350 vans, which weigh less than 10,000 pounds.

68. In sum, Purpiglio and the Straight Time Employees are non-exempt employees and, therefore, entitled to overtime wages.

69. But DropOff does not pay these non-exempt employees, including Purpiglio and the other Straight Time Employees, overtime wages when they work more than 40 hours in a workweek.

CLASS & COLLECTIVE ACTION ALLEGATIONS

70. Purpiglio incorporates all other paragraphs by reference.

71. Purpiglio brings his claims as a class and collective action on behalf of himself and the other Straight Time Employees.

72. The Straight Time Employees are uniformly victimized by DropOff's straight time for overtime pay scheme, which is in willful violation of the FLSA, MWHL, MWPCL, PMWA, and PWPCL.

73. Other Straight Time Employees worked with Purpiglio and indicated they were paid in the same manner, performed similar work, and were subject to DropOff's same straight time for overtime pay scheme.

74.    Based on his experience with DropOff, Purpiglio is aware DropOff's illegal practices were imposed on the Straight Time Employees.

75.    The Straight Time Employees are similarly situated in all relevant respects.

76.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

77.    Any relevant exemption defenses would require DropOff to pay the Straight Time Employees on a salary basis.

78.    Because DropOff fails the salary basis test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

79.    The relevant job duty is whether the Straight Time Employees worked more than 40 hours in a week (which, by definition, they did).

80.    Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent class or collective treatment.

81.    Rather, DropOff's uniform straight time for overtime pay scheme renders Purpiglio and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

82.    DropOff's records reflect the number of hours worked each week by the Straight Time Employees.

83.    DropOff's records also show the Straight Time Employees were paid "straight time," instead of "time and a half," for their overtime hours.

84.    The back wages owed to Purpiglio and the other Straight Time Employees can be calculated using the same formula applied to the same records.

85.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to DropOff's records, and there is no detraction from the common nucleus of liability facts.

86.     Therefore, the issue of damages does not preclude class or collective treatment.

87.     Purpiglio's experiences are therefore typical of the experiences of the Straight Time Employees.

88.     Purpiglio has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent class or collective treatment.

89.     Like each Straight Time Employee, Purpiglio has an interest in obtaining the unpaid wages owed under federal and/or state law.

90.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91.     Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries, and DropOff will reap the unjust benefits of violating the FLSA, MWHL, MWPCL, PMWA, and PWPCL.

92.     Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

93.     Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

94.     The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

95.     Among the common questions of law and fact are:

   a.     Whether DropOff applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

b.  Whether DropOff misclassified Purpiglio and the Straight Time Employees as exempt from the FLSA's, MWHL's, MWPCL's, PMWA's, and PWPCL's overtime provisions;

c.  Whether Purpiglio and the Straight Time Employees are non-exempt employees entitled to overtime wages;

d.  Whether DropOff's straight time for overtime pay scheme satisfies the "salary basis" test;

e.  Whether DropOff's straight time for overtime pay scheme deprived Purpiglio and the Straight Time Employees of premium overtime wages they are owed under the FLSA, MWHL, and/or PMWA;

f.  Whether DropOff's straight time for overtime pay scheme deprived Purpiglio and the Straight Time Employees of all wages due, earned, and owed to them under the MWPCL and/or PWPCL;

g.  Whether DropOff's violations of the FLSA, MWHL, MWPCL, PMWA, and/or PWPCL resulted from a continuing course of conduct;

h.  Whether DropOff's decision to classify Purpiglio and the Straight Time Employees as exempt from overtime was made in good faith;

i.  Whether DropOff's decision not to pay Purpiglio and the Straight Time Employees overtime was made in good faith;

j.  Whether DropOff's violations of the FLSA, MWHL, MWPCL, PMWA, and/or PWPCL were willful.

96.  Purpiglio knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

97.     As part of its regular business practices, DropOff intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, MWHL, MWPCL, PMWA, and PWPCL with respect to the Straight Time Employees.

98.     DropOff's illegal straight time for overtime pay scheme deprived Purpiglio and the other Straight Time Employees of the premium overtime wages they are owed under state and/or federal law.

99.     There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

100.    This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

101.    The Straight Time Employees are known to DropOff, are readily identifiable, and can be located through DropOff's business and personnel records.

### DropOff's Violations Were Willful and/or Done in Reckless Disregard of the FLSA, MWHL, MWPCL, PMWA, and/or PWPCL

102.    Purpiglio incorporates all other paragraphs by reference.

103.    DropOff knew it was subject to the FLSA's, MWHL's, and PMWA's respective overtime provisions.

104.    DropOff knew the FLSA, MWHL, and PMWA required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

105.    DropOff knew it was subject to the MWPCL and the PWPCL.

106.    DropOff knew the MWPCL and PWPCL required it to pay employees, including the Straight Time Employees, all wages (including overtime wages) due, earned, and owed to them.

107.    DropOff knew each Straight Time Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed because it expected and required these workers to do so.

108.    DropOff knew the Straight Time Employees were its hourly employees.

109.    DropOff knew it paid the Straight Time Employees on an hourly basis.

110.    DropOff knew it paid the Straight Time Employees straight time for overtime.

111.    DropOff knew it did not pay the Straight Time Employees on a "salary basis."

112.    DropOff knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to deduction based on the number of hours or days worked.

113.    DropOff knew its straight time for overtime pay scheme did not satisfy the salary basis test.

114.    DropOff knew it needed to pass the salary basis test to qualify for the exemptions it claimed with respect to the Straight Time Employees.

115.    DropOff knew the Straight Time Employees' primary duties do not include supervising any DropOff employees.

116.    DropOff knew Purpiglio and the Straight Time Employees' primary duties were not management.

117.    DropOff knew the Straight Time Employees' primary duties do not include exercising independent discretion or judgment with respect to matters of significance.

118.    DropOff knew the Straight Time Employees primarily performed non-exempt work.

119.    DropOff knew that, as Medical Couriers, the Straight Time Employees drove Ford E-350 vans, which weigh less than 10,000 pounds.

120.    Nonetheless, DropOff uniformly misclassified the Straight Time Employees as exempt and refused to pay them overtime.

121.    DropOff's decision to misclassify Purpiglio and the Straight Time Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

122.    Likewise, DropOff's failure to pay Purpiglio and the Straight Time Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

123.    DropOff knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA, MWHL, MWPCL, PMWA, and PWPCL.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

124.    Purpiglio incorporates all other paragraphs by reference.

125.    Purpiglio brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

126.    DropOff violated, and is violating, the FLSA by employing the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

127.    DropOff's unlawful conduct harmed Purpiglio and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

128.    Accordingly, Purpiglio and the FLSA Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

<u>COUNT II</u>

FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL
(MARYLAND CLASS)

129.    Purpiglio incorporates all other paragraphs by reference.

130.    Purpiglio brings his MWHL claims as a class action on behalf of himself and the other Maryland Class Members pursuant to FED. R. CIV. P 23.

131.    The conduct alleged violates the MWHL. *See* MD. CODE, LAB. & EMPL. §§ 3-415(a) and 3-420(a).

132.    At all relevant times, DropOff was an "employer" within the meaning of the MWHL. *See* MD. CODE, LAB. & EMPL. § 3-401(b).

133.    At all relevant times, DropOff employed Purpiglio and the Maryland Class Members as covered "employees" within the meaning of the MWHL.

134.    The MWHL requires employers, like DropOff, to pay employees, like Purpiglio and the Maryland Class Members, overtime wages at rates not less than 1.5 times their regular rate of pay for all hours worked after 40 in a workweek. *See* MD. CODE, LAB. & EMPL. § 3-415(a).

135.    The MWHL further requires employers, like DropOff, to calculate an employee's overtime wage rate under § 3-415 on the basis of each hour over 40 that an employee works during one workweek. *See* MD. CODE, LAB. & EMPL. § 3-420(a).

136.    DropOff violated, and is violating, the MWHL by employing Purpiglio and the Maryland Class Members in a covered enterprise for workweeks longer than 40 hours without paying such non-exempt employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.  *See* MD. CODE, LAB. & EMPL. §§ 3-415(a) and 3-402(a).

137.    DropOff's unlawful conduct harmed Purpiglio and the other Maryland Class Members depriving them of the overtime wages they are owed.

14

138.    Accordingly, Purpiglio and the Maryland Class Members are entitled to recover their unpaid overtime wages in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* MD. CODE, LAB. & EMPL. § 3-427.

**COUNT III**

**FAILURE TO PAY ALL WAGES EARNED UNDER THE MWPCL**
**(MARYLAND CLASS)**

139.    Purpiglio incorporates all other paragraphs by reference.

140.    Purpiglio brings his MWPCL claims as a class action on behalf of himself and the other Maryland Class Members pursuant to FED. R. CIV. P 23

141.    The conduct alleged violates the MWPCL. *See* MD. CODE, LAB. & EMPL. §§ 3-501, *et seq.*

142.    At all relevant times, DropOff was an "employer" within the meaning of the MWPCL. *See* MD. CODE, LAB. & EMPL. § 3-501(b).

143.    At all relevant times, DropOff employed Purpiglio and the Maryland Class Members as covered "employees" within the meaning of the MWPCL.

144.    Purpiglio and the Maryland Class Members are entitled to all "wages" due within the meaning of the MWPLC. *See* MD. CODE, LAB. & EMPL. § 3-501(c).

145.    The MWPCL requires employers, like DropOff, to timely pay employees, including Purpiglio and the Maryland Class Members, all wages (including overtime wages) due, earned, and owed to them for the work they performed. *See* MD. CODE, LAB. & EMPL. § 3-505(a).

146.    DropOff violated, and is violating, the MWPCL by failing to pay Purpiglio and the Maryland Class Members all wages (including overtime wages) due, earned, and owed to them for the work they performed. *See* MD. CODE, LAB. & EMPL. § 3-505(a).

147.    DropOff's failure to pay Purpiglio and the Maryland Class Members all wages due for the work they performed was not the result of any *bona fide* dispute.

148.     DropOff's unlawful conduct harmed Purpiglio and the other Maryland Class Members depriving them of the overtime wages they are owed.

149.     Accordingly, Purpiglio and the Maryland Class Members are entitled to recover their unpaid overtime wages, plus treble damages, as well as attorney's fees and costs. *See* MD. CODE, LAB. & EMPL. § 3-507.2.

## COUNT IV

### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

150.     Purpiglio incorporates all other paragraphs by reference.

151.     Purpiglio brings his PMWA claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P 23

152.     The conduct alleged violates the PMWA, 43 PA. STAT. §§ 333.101, *et seq.*

153.     At all relevant times, DropOff was an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

154.     At all relevant times, DropOff employed Purpiglio and the Pennsylvania Class Members as covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

155.     The PMWA requires employers, like DropOff, to pay employees, like Purpiglio and the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* 43 PA. STAT. § 333.104(c).

156.     DropOff violated, and is violating, the PMWA by employing Purpiglio and the Pennsylvania Class Members in a covered enterprise for workweeks longer than 40 hours without paying such non-exempt employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek. *See* 43 PA. STAT. § 333.104(c).

157.     DropOff's unlawful conduct harmed Purpiglio and the other Pennsylvania Class Members depriving them of the overtime wages they are owed.

158.    Accordingly, Purpiglio and the Pennsylvania Class Members are entitled to recover their overtime wages in an amount equal to 1.5 times their regular rates of pay, prejudgment interest, all available penalties, as well as attorney's fees and costs. *See* 43 PA. STAT. § 333.113.

**COUNT V**

**FAILURE TO PAY ALL WAGES EARNED UNDER THE PWPCL
(PENNSYLVANIA CLASS)**

159.    Purpiglio incorporates all other paragraphs by reference.

160.    Purpiglio brings his PWPCL claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P 23

161.    The conduct alleged violates the PWPCL, 43 PA. STAT. §§ 260.1, *et seq.*

162.    At all relevant times, DropOff was an "employer" within the meaning of the PWPCL. *See* 43 PA. STAT. § 260.2a.

163.    At all relevant times, DropOff employed Purpiglio and the Pennsylvania Class Members as covered "employees" within the meaning of the PWPCL.

164.    The PWPCL requires employers, like DropOff, to pay employees, like Purpiglio and the Pennsylvania Class Members, all wages (including overtime wages) due, earned, and owed to them for the work they performed on their regular payday. *See* 43 PA. STAT. § 260.3(a).

165.    DropOff violated, and is violating, the PWPCL by failing to pay Purpiglio and the Pennsylvania Class Members all wages (including overtime wages) due, earned, and owed to them for the work they performed.

166.    DropOff's failure to pay Purpiglio and the Pennsylvania Class Members all wages due for the work they performed was not the result of any *bona fide* dispute.

167.    DropOff's unlawful conduct harmed Purpiglio and the other Pennsylvania Class Members depriving them of the overtime wages they are owed.

168.    Accordingly, Purpiglio and the Pennsylvania Class Members are entitled to recover their unpaid overtime wages, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* 43 PA. STAT. § 260.9a.

**JURY DEMAND**

169.    Purpiglio demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Purpiglio, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing their written consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Purpiglio and his counsel to represent the interests of the FLSA Collective, Maryland Class, and Pennsylvania Class;

d.    An Order pursuant to Section 16(b) of the FLSA finding DropOff liable for unpaid back wages due to Purpiglio and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding DropOff liable to Purpiglio and the Maryland Class Members for unpaid overtime wages owed under the MWHL, plus liquidated damages in an amount equal to their unpaid wages;

f.    An Order finding DropOff liable to Purpiglio and the Maryland Class Members for unpaid wages owed under the MWPCL, plus treble damages;

18

g.     An Order finding DropOff liable to Purpiglio and the Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, as well as for any available penalties;

h.     An Order finding DropOff liable to Purpiglio and the Pennsylvania Class Members for all unpaid wages owed under the PWPCL, plus liquidated damages in an amount equal to their unpaid wages;

i.     A Judgment against DropOff awarding Purpiglio and the Putative Class Members all their unpaid wages, liquidated damages, treble damages, and any other penalties available under the FLSA, MWHL, MWPCL, PMWA, and/or PWPCL;

j.     An Order awarding attorney's fees, costs, and expenses;

k.     Pre- and post-judgment interest at the highest applicable rates; and

l.     Such other and further relief as may be necessary and appropriate.

Dated: August 4, 2023.                     Respectfully submitted,

                                           JOSEPHSON DUNLAP LLP

                                           By: /s/ Michael A. Josephson
                                               **Michael A. Josephson**
                                               Texas Bar No. 24014780
                                               **Andrew W. Dunlap**
                                               Texas Bar No. 24078444
                                               11 Greenway Plaza, Suite 3050
                                               Houston, Texas 77046
                                               713-352-1100 – Telephone
                                               713-352-3300 – Facsimile
                                               mjosephson@mybackwages.com
                                               adunlap@mybackwages.com

                                               **Richard J. (Rex) Burch**
                                               Texas Bar No. 24001807
                                               **BRUCKNER BURCH PLLC**
                                               11 Greenway Plaza, Suite 3025
                                               Houston, Texas 77046
                                               713-877-8788 – Telephone
                                               713-877-8065 – Facsimile
                                               rburch@brucknerburch.com

                                           **ATTORNEYS FOR PLAINTIFF
                                           & PUTATIVE CLASS MEMBERS**